Filed 8/30/22  In re Cole Y. CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re COLE Y., a Person Coming Under the Juvenile Court Law. | B311014 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 19CCJP03638A) |
| Plaintiff, | |
| v. | |
| K.Y., | |
| Defendant and Appellant; | |
| GENA T., | |
| Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Marguerite Downing, Judge.  Affirmed.

John L. Dodd, under appointment by the Court of Appeal, for Defendant and Appellant K.Y.

Karen B. Stalter, under appointment by the Court of Appeal, for Respondent Gena T.

No appearance for Plaintiff.

———————————

K.Y. (father) appeals from an order of the juvenile court terminating jurisdiction over his son, Cole Y., and granting full legal and physical custody to Cole's mother, Gena T. (mother). We conclude that father forfeited his claim of insufficient notice that the juvenile court might grant mother sole legal custody and, in any event, father received adequate notice. Further, the juvenile court did not abuse its discretion by granting mother sole legal custody. We therefore affirm the custody order.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.   Petition, jurisdiction, and disposition.

The family has been the subject of many referrals to the Los Angeles County Department of Children and Family Services (DCFS), as well as two prior sustained dependency petitions. In May 2009, the juvenile court sustained a petition alleging that mother and father had engaged in a violent altercation, had histories of substance abuse, and were methamphetamine users, putting Cole (born in September 2008) at risk of physical harm. That case terminated in May 2010. Four years later, in March 2014, the juvenile court sustained another petition alleging that father had allowed a drug abuser to live in his home and supervise Cole, had left methamphetamines and a syringe where Cole could access them, and had tested positive for

2

methamphetamines and amphetamines. The same month, the juvenile court terminated its jurisdiction with a family law order giving mother sole physical custody of Cole.[1] Subsequently, a family court awarded father primary physical custody of Cole after mother moved with him to Arizona without court permission.

In April 2019, DCFS received a report that father was not appropriately supervising Cole and was allowing illicit drugs to be used in his home. Cole told a children's social worker (CSW) that many people came through father's home who he thought might be under the influence of drugs, and he reported seeing a baggie of white powder and a pipe in the house. He said there sometimes was a chemical smell in the hallway that he thought might be caused by people who stayed in the bathroom for a long time. He also reported that police had been called to his father's home a week earlier because of a verbal argument between father and father's girlfriend. Cole said he currently spent weekdays with father and weekends with mother, but he would prefer to live with mother.

Mother said she met father when she was young and they had abused crystal meth together. She completed court-ordered programs in 2009 and had been sober since 2010. Based on what Cole had told her, she believed that father and others in his home were using drugs; she thought father might also be selling drugs.

---

[1]     Father appealed from that order and, in a published opinion, another division of this court affirmed the jurisdictional findings and order terminating jurisdiction to the extent it granted mother sole physical custody of Cole and granted father monitored visitation. (*In re Cole Y.* (2015) 233 Cal.App.4th 1444, 1451.)

Mother said recently Cole had not wanted to return to father on Sundays. She was concerned for Cole's well-being and had difficulty co-parenting with father because he angered easily and became physical with her when he was upset.

In June 2019, DCFS filed a petition alleging that Cole was at substantial risk of serious physical harm within the meaning of Welfare and Institutions Code[2] section 300, subdivision (b) because father had an unresolved history of methamphetamine use which put Cole at risk of harm. On June 10, 2019, the court ordered Cole detained from father and placed with mother under DCFS supervision.

In June 2019, Cole told a CSW that he had not felt safe living with father and had struggled at school because of his home environment. He reported having seen drugs and needles in father's home and hearing frequent arguments between father, father's girlfriend, and other adults in the home. He did not want to have visits with father unless father got help.

Maternal uncle Jonathan W., who had lived with mother for three years, reported an incident where father and his girlfriend dropped off Cole more than an hour late and appeared to be under the influence of a substance. Jonathan expressed concerns about Cole's safety in father's care and said Cole did not want to return to father's home at the end of the weekends.

The CSW monitored a visit between Cole and father in July 2019 during which Cole appeared comfortable with father. However, during a subsequent visit with father, the paternal grandmother, and an adult half-brother, Cole texted his mother

---

[2] All subsequent statutory references are to the Welfare and Institutions Code.

4

that the paternal grandmother had offered him $50,000 to get a passport and move back in with father. The CSW addressed the issue with father, who said the paternal grandmother wanted to gift Cole $50,000 from the sale of property in Iran, but Cole needed to have a passport to receive the money. Father said he could not get Cole a passport unless Cole came back to live with him. Father did not believe Cole was upset in any way by the conversation and thought mother had put Cole up to reporting it.

Father tested negative for all drugs in July, August, and September 2019.

On October 15, 2019, father pled no-contest to the allegations of the petition.[3] The court sustained the petition, declared Cole a juvenile court dependent, and placed Cole with mother under DCFS supervision. The court ordered mother to complete a parenting class, and ordered father to submit to eight on-demand drug tests, to complete a drug/alcohol program if he tested positive for any substance, and to enroll in individual counseling to address case issues. Father was granted monitored visitation.

## II.    Subsequent events; termination of court jurisdiction.

Father tested positive for amphetamines and methamphetamines once in October 2019, three times in November 2019, twice in December 2019, and once in January 2020, after which he stopped testing. Father claimed that his positive tests were due to his use of prescription Desoxyn to treat attention deficit disorder, and he said his levels varied because he

---

[3]    It appears that the petition was amended by interlineation, but the amended petition was not included in the appellate record.

5

sometimes took more than one pill. Father's doctor said, however, that while Desoxyn could cause father to test positive for methamphetamines, the amount father was prescribed should not have caused him to test at the high levels indicated. In January 2020, father's doctor said he was no longer prescribing Desoxyn for father.

In April 2020, DCFS reported that Cole was thriving in mother's home and had had positive visits with father. Cole said he liked spending time with father but wanted to continue to live with mother. He reported his parents were getting along better, which made him happy. Mother said she and father had been communicating more effectively and had made arrangements for visits.

A hearing originally was set for April 28, 2020, but was continued due to the Covid-19 pandemic. In November 2020, mother filed a section 388 petition requesting that jurisdiction be terminated with a family court order. In a report filed December 18, 2020, DCFS recommended that the court grant mother's petition, terminate its jurisdiction, grant joint legal custody to the parents and sole physical custody to mother, and permit father monitored visits.

The juvenile court held a hearing on mother's petition on December 21, 2020. The court noted that DCFS's recommendation was to terminate jurisdiction with a custody order, and since father had monitored visitation, "the custody order would be sole legal, sole physical custody to the mother." Father's counsel objected to monitored visitation but not to granting mother sole legal and physical custody. At father's request, the court continued the matter for a contested hearing.

6

The hearing resumed on January 13, 2021. Father's counsel asked to call Cole to testify about whether visits with father were monitored, how they were going, and whether he felt comfortable in father's home. Cole's counsel said the bigger issue with regard to unmonitored visits was father's drug use, noting that father had consistently tested positive for methamphetamine and had not drug-tested in over a year. Counsel for DCFS and mother concurred, and the court declined to allow father's counsel to call Cole. Father did not submit any additional evidence or ask to call any other witnesses.

After hearing argument, the court found that its continued supervision was unnecessary and terminated jurisdiction with an family law order giving mother sole legal and physical custody. The court stayed its order to allow counsel to submit a written custody order. On January 29, 2021, the juvenile court signed a custody order and terminated its jurisdiction.

Father timely appealed from the custody order.

## DISCUSSION

Father contends (1) his due process rights were violated because he did not receive proper notice of the juvenile court's intention to grant mother full legal custody, and (2) the juvenile court's order was not supported by substantial evidence. For the reasons that follow, father's contentions lack merit.

## I.  Father received proper notice.

Father contends his due process rights were violated because he did not have notice of the juvenile court's intention to award mother sole legal custody. While he concedes he received notice of the hearing itself and of DCFS's recommendations, he

7

urges he also was entitled to specific notice that the court might grant mother sole legal custody.

We conclude that father forfeited the issue by failing to raise it in the juvenile court. "An appellate court ordinarily will not consider challenges based on procedural defects or erroneous rulings where an objection could have been but was not made in the trial court. [Citation.] . . . . The purpose of the forfeiture rule is to encourage parties to bring errors to the attention of the juvenile court so that they may be corrected. [Citation.] Although forfeiture is not automatic, and the appellate court has discretion to excuse a party's failure to properly raise an issue in a timely fashion [citation], in dependency proceedings, where the well-being of the child and stability of placement is of paramount importance, that discretion 'should be exercised rarely and only in cases presenting an important legal issue.' [Citation.]" (*In re Wilford J.* (2005) 131 Cal.App.4th 742, 754.)

When a parent has the opportunity to present an issue to the juvenile court and fails to do so, appellate courts routinely refuse to exercise their discretion to consider the issue on appeal. Here, both father and his counsel were present and participated in the December 21, 2020 and January 13, 2021 hearings. Father's counsel did not raise any defect in notice at either hearing or during the more than two weeks between the January hearing and the date the court signed the custody order. Accordingly, the notice issue is forfeited.

Further, on the merits, we conclude that father received proper notice. It is undisputed that father received notice of the hearings and of DCFS's recommendation to terminate juvenile court jurisdiction and enter a custody order. We are not aware of any legal authority, nor does father cite to any, suggesting that

8

father was also entitled to notice of the court's intended rulings or to be told that the court might rule inconsistently with DCFS's recommendation—and, in any event, the court stated at the December 21, 2020 hearing that since father's visitation remained monitored, "the custody order would be *sole legal*, sole physical custody to the mother." (Italics added.) Following the court's statement, father's counsel asked to continue the hearing to allow him to present evidence, and the juvenile court responded that father "is entitled to a contest" and continued the hearing. We thus find no defect in notice.

Father notes finally that notwithstanding DCFS's written recommendation to terminate the case with a custody order giving the parents joint legal custody, county counsel asked at the hearing that mother be awarded "sole physical and sole legal custody." Father urges that "[s]pringing this request on father at the last minute denied him the notice required by due process of law." It appears that county counsel misspoke, as she nowhere indicated that DCFS had changed its substantive recommendation. But if father's counsel believed otherwise, he had ample opportunity to say so at the hearing, and his failure to do so forfeited the issue.

## II. The juvenile court did not abuse its discretion by awarding mother sole legal custody of Cole.

" 'When the juvenile court terminates its jurisdiction over a dependent child, section 362.4 authorizes it to make custody and visitation orders that will be transferred to an existing family court file and remain in effect until modified or terminated by the superior court.' " (*In re Chantal S.* (1996) 13 Cal.4th 196, 203; § 362.4.) We review the juvenile court's decision to terminate dependency jurisdiction and to issue a custody order pursuant to

9

section 362.4 for an abuse of discretion "and may not disturb the order unless the court ' " 'exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination [citations].' " ' " (*Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 300.)

It is well-established that the family law presumption favoring joint custody does not apply to juvenile court custody orders entered upon termination of jurisdiction. (*In re Jennifer R.* (1993) 14 Cal.App.4th 704, 711–713.) To the contrary, " '[w]hen making a custody determination in any dependency case, the court's focus and primary consideration must always be the best interests of the child. [Citations.] Furthermore, the court is not restrained by "any preferences or presumptions." [Citation.] Thus, for example, a finding that neither parent poses any danger to the child does not mean that both are equally entitled to half custody, since joint physical custody may not be in the child's best interests for a variety of reasons. [Citation.]' ([*In re Nicholas H.* (2003) 112 Cal.App.4th 251], 268.)" (*In re Maya L.* (2014) 232 Cal.App.4th 81, 102–103.)

The juvenile court did not abuse its discretion by awarding mother sole legal custody of Cole. The court had sustained a petition alleging that father's methamphetamine use rendered him unable to safely care for Cole, and father had refused to drug test for more than a year prior to the January 13, 2021 hearing or to enroll in drug treatment. The court thus had reason to doubt father's ability to make decisions in Cole's best interests. Further, there was evidence in the record suggesting that father would not effectively co-parent with mother. Shortly after Cole was detained from father and placed with mother, father contacted the CSW to object to mother having enrolled Cole in a

10

school near her house in Oxnard, rather than leaving him at his prior school in Hidden Hills. Subsequently, father threatened to tell the court mother was abusing drugs if she did not agree to share custody of Cole, and he and his mother offered Cole money to agree to move back in with him. And, mother reported that she had difficulty co-parenting with father because he angered easily and became physical with her when he was angry. Under these circumstances, the court did not abuse its discretion by granting mother sole legal custody of Cole.

## DISPOSITION

The order granting mother sole legal and physical custody is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, P. J.

We concur:

LAVIN, J.

EGERTON, J.